UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAUL G. ANDERSON,<br><br>       Petitioner,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>       Respondent. | Case No. 1:13-cv-00496-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Paul Anderson's Petition for Review of the Respondent's denial of social security benefits, filed November 19, 2013. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

**PROCEDURAL AND FACTUAL HISTORY**

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on August 19, 2010, claiming disability as of July 1, 2009. This application was denied initially and on reconsideration, and a hearing was held on June

**MEMORANDUM DECISION AND ORDER - 1**

12, 2012, before Administrative Law Judge (ALJ) John Molleur. After hearing testimony from Petitioner and a vocational expert, ALJ Molleur issued a decision finding Petitioner not disabled on June 27, 2012. Petitioner timely requested review by the Appeals Council, which denied his request for review on October 30, 2013.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 51 years of age. Petitioner has some high school education and has earned a GED. Petitioner's prior work experience includes delivery truck driver, warehouse worker, and restaurant kitchen worker.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date, July 1, 2009. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner had the following severe impairments within the meaning of the Social Security Administration regulations: status post melanoma with polyp and lymph node removal, obesity, bipolar disorder, attention-deficit hyperactivity disorder, and history of polysubstance abuse in sustained remission.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically listings 12.04 (affective disorders), 12.06

**MEMORANDUM DECISION AND ORDER - 2**

(anxiety-related disorders), 12.09 (substance addiction disorders), and 13.03 (malignant neoplastic disease of the skin). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined Petitioner had the RFC to perform a limited range of light unskilled work. Based on this RFC, the ALJ found Petitioner was not able to perform his past relevant work as a delivery truck driver and warehouse worker. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Based on testimony from the vocational expert, the ALJ concluded Petitioner was not disabled because he could perform other work, including motel housekeeper, mailer machine operator, and parking lot attendant.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental

**MEMORANDUM DECISION AND ORDER - 3**

impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Id.* It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may

**MEMORANDUM DECISION AND ORDER - 4**

question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner believes the ALJ erred at steps three and four. First, Petitioner argues the ALJ had insufficient reasons for discrediting Petitioner's reports about the intensity, persistence, and limiting effects of his impairments, including his hand tremors, left arm pain, and history of psychiatric hospitalizations. Second, Petitioner claims ALJ Molleur improperly weighed the medical opinion evidence, giving too little weight to the opinions of Petitioner's treating mental health care providers—Nurse Practitioner Joycelyn Reiland and Dr. Scott Hoopes. Third, Petitioner argues the ALJ's RFC finding did not account for all of Petitioner's physical and mental limitations. For these reasons, Petitioner urges the Court to remand Petitioner's case for an immediate award of disability benefits.

### 1. Petitioner's Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id.* at 722. If a

**MEMORANDUM DECISION AND ORDER - 5**

claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Where, as here, there is no affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Id*. at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas*, 278 F.3d at 958–59. Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by

**MEMORANDUM DECISION AND ORDER - 6**

the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p. Likewise, a claimant's receipt of unemployment benefits after the alleged onset date may "undermine a claimant's alleged inability to work fulltime." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161–62 (9th Cir. 2008). However, the mere receipt of employment benefits is insufficient to support the ALJ's adverse credibility finding without evidence that the claimant asserted he could work fulltime. *Id.*

In this case, Petitioner alleges he cannot perform light unskilled work due in part to bipolar disorder, tremors in both hands, and left arm pain. ALJ Molleur determined Petitioner's testimony concerning the limiting effects of these impairments was not fully credible. To support this finding, the ALJ cited Petitioner's receipt of unemployment benefits after his alleged onset date, inconsistencies between the medical records and Petitioner's alleged disabling symptoms, and Petitioner's daily activities.

ALJ Molleur noted that Petitioner received unemployment benefits during the second and third quarters of 2010. Relying on this fact, the ALJ found "that in order to receive unemployment benefits, an individual such as the claimant must assert that he is ready, willing, and able to work, which is inconsistent with alleging limitations so severe as to be unable to engage in substantial gainful activity." (AR 19.) Petitioner argues the record is insufficient to support this finding, because it does not disclose whether Petitioner asserted he could work fulltime. Petitioner further argues that Idaho's administrative rules for unemployment insurance benefits do not preclude benefits for a "claimant with a disability" so long as "he is willing to work the maximum number of hours that he has established through medically verifiable evidence that he is able to

**MEMORANDUM DECISION AND ORDER - 7**

work." IDAPA 09.01.30.150.01. In short, Petitioner contends his receipt of unemployment benefits is not necessarily inconsistent with his alleged disability.

Respondent attempts to counter with a citation to an Idaho Department of Labor website, which describes the eligibility criteria for unemployment benefits. But the ALJ did not cite this website (or any legal authority) as the basis for his conclusion, and the Court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). ALJ Molleur instead cited documents that merely show Petitioner received unemployment benefits during 2010. The documents do not disclose whether Petitioner claimed he could work fulltime. Therefore, substantial evidence did not support the ALJ's conclusion that Petitioner was less credible because he received unemployment benefits. *See Carmickle*, 533 F.3d at 1162.

Petitioner also claims the ALJ erred in identifying inconsistencies between Petitioner's alleged symptoms and the medical records. Petitioner testified that he was unable to work due to a combination of constant tremors in his hands, left arm pain, and mental impairments—including inability to focus, poor short-term memory, anxiety, and depression. Although ALJ Molleur recognized that Petitioner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he found "claimant's longitudinal medical history fails to provide strong support for the claimant's allegations of disabling symptoms and limitations." (AR 17.) Petitioner claims the medical evidence is consistent with his alleged symptoms and thus undercuts the ALJ's conclusion.

Upon review of record, the Court finds substantial evidence to support the ALJ's

**MEMORANDUM DECISION AND ORDER - 8**

finding that the medical records cast doubt on Petitioner's testimony. With regard to Petitioner's alleged constant tremors, the ALJ noted the December 2010 findings of Dr. Ralph Heckard, who conducted a physical examination of Petitioner and explained that Petitioner's tremors, albeit "intermittent" and "variably intense," did not inhibit his ability to write or handle light objects. (*Id.* at 358.) Likewise, ALJ Molleur cited the September 2009 notes of Petitioner's treating mental health nurse practitioner, Reiland, which state that Petitioner reported the tremors were pronounced on some days and non-existent on other days. (*Id.* at 344.) Thus, the record contains substantial medical evidence to support a finding that Petitioner's tremors did not preclude a limited range of light unskilled work.

Moreover, the ALJ did not rely solely on the medical evidence in evaluating Petitioner's credibility. For example, the ALJ noted that Petitioner completed an Adult Function Report by himself and that the handwriting appeared "legible and smooth," even though Petitioner claimed his tremors prevented him from writing legibly. (*Id.* at 18.) In response, Petitioner argues that he needed 20 minutes to write one sentence on the Adult Function Report due to his tremors. However, Petitioner's hearing testimony on this point is at best ambiguous. When Petitioner's attorney questioned him about needing 20 minutes to write one sentence, he responded: "Because I was rereading the—what they wanted me to write, because I wasn't in full understanding of it . . . ." (AR 46.) Given this ambiguous testimony, the ALJ could reasonably conclude that Petitioner's claims about the severity of his tremors were not fully credible.

In addition, the ALJ rationally found Petitioner's claims of disabling tremors and

**MEMORANDUM DECISION AND ORDER - 9**

left arm pain inconsistent with his day-to-day activities. For example, the ALJ noted that Petitioner drives, shops for groceries and clothes, mows his friend's lawn, walks and cares for his friend's dog, performs household chores, and prepares simple meals. Each of these activities could reasonably be found inconsistent with allegations of disabling arm pain and tremors. Thus, while the evidence could support an interpretation more favorable to Petitioner, the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Regarding the limiting effects of his mental impairments, Petitioner essentially argues ALJ Molleur overlooked his long history of psychiatric care. Petitioner emphasizes that he experienced several psychiatric hospitalizations in 2006 and 2007—years before his alleged onset date. However, the ALJ specifically noted the hospitalizations occurred at a time when Petitioner was able to maintain employment that easily qualified as substantial gainful activity. With respect to Petitioner's mental health treatment after the alleged onset date, the ALJ noted improvement with medication in 2009 and 2010 followed by somewhat increased depression and mood lability in 2011 and 2012. But the ALJ found, based on nurse Reiland's treatment notes, that Petitioner mood lability during the later period was caused primarily by his finances, unemployment, social isolation, and difficulty transitioning after release from a 17-year period of probation—as opposed to recurrent psychosis.

Petitioner argues that any improvement evident in the record waned over time and was largely due to a prescription medication, Seroquel, which Reiland eventually

**MEMORANDUM DECISION AND ORDER - 10**

discontinued. While this may be a plausible interpretation of the record, Reiland's treatment notes also substantially support the ALJ's finding that Petitioner's financial and social stressors were the primary factors affecting his mood. Accordingly, the Court will not second-guess the ALJ. *See Tackett*, 180 F.3d at 1098.

Notwithstanding the erroneous finding that Petitioner's receipt of unemployment benefits diminished his credibility, ALJ Molleur specifically identified multiple clear and convincing reasons for his adverse credibility finding. Petitioner's allegations of disabling arm pain and constant tremors could reasonably be found inconsistent with both the medical record and Petitioner's daily activities. And the record as a whole supports the ALJ's finding that Petitioner's psychiatric hospitalizations in 2006 and 2007 did not indicate a disabling mental illness from July of 2009 onward. Thus, substantial evidence supported the ALJ's conclusion that Petitioner's physical and mental limitations were not as severe as Petitioner claimed.

2.  **Medical Opinions**

Next, Petitioner argues ALJ Molleur erred in weighing the medical opinion evidence in two ways. First, Petitioner claims the ALJ had an insufficient basis for disregarding a Psychiatric Review Technique Form (PRTF) prepared by Petitioner's treating mental health care providers—Nurse Practitioner Reiland and Dr. Hoopes. According to Petitioner, he suffers from a disabling affective disorder, because the PRTF indicates he meets both the "B" and "C" criteria for Listing 12.04. Second, Petitioner argues the ALJ's description of Petitioner's mental limitations is inherently flawed because the ALJ did not give controlling weight to Hoopes's opinions or the opinions of

**MEMORANDUM DECISION AND ORDER - 11**

the doctors who treated Petitioner during his psychiatric hospitalizations.

Cases decided by the United States Court of Appeals for the Ninth Circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of treating physicians than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may undercut the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id*. Additionally, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

**MEMORANDUM DECISION AND ORDER - 12**

A.  *The PRTF*

Reiland and Hoopes jointly prepared the PRTF in late March of 2012. The PRTF is a standardized, checkbox form, memorializing Reiland and Hoopes's opinion that Petitioner met Listing 12.04. (AR 370–383.) Aside from a few brief notes in the margins, the PRTF does not include specific clinical findings, nor does it specify the time period to which the assessment applies. (*Id.*) To meet Listing 12.04, a claimant must suffer from depressive syndrome, manic syndrome, or bipolar syndrome, and satisfy the criteria set forth in either Paragraph B or C of the Listing.

A claimant satisfies the B criteria if he has least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.04. Under the regulations, "repeated episodes of decompensation, each of extended duration means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.* at Listing 12.00.C.4.

On the PRTF, Reiland and Hoopes indicated that Petitioner satisfied the B criteria, because he experienced marked difficulties in maintaining concentration, persistence, or pace, and four or more episodes of decompensation each of extended duration. (AR 380.) With respect to the episodes of decompensation, Reiland and Hoopes note a "history of six hospitalizations for decompensation," but they do not specify when the hospitalizations occurred or how long the decompensation lasted. (*Id.*) By contrast, ALJ

**MEMORANDUM DECISION AND ORDER - 13**

Molleur found that Petitioner had only moderate difficulties maintaining concentration, persistence, or pace, and no episodes of decompensation that were of extended duration. (*Id.* at 15.)

"When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). In this case, the ALJ found the PRTF conflicted with Reiland's own treatment notes.[1] For instance, the ALJ reasonably concluded that Reiland's treatment notes—which, aside from some forgetfulness, medication-related daytime sedation, and "mental fogginess," do not mention impaired concentration, persistence, or pace (AR 511)—did not evidence the marked limitations indicated on the PRTF. And, even if Petitioner did have marked limitations in these areas, Petitioner does not identify anything in the record to suggest that he experienced "repeated episodes of decompensation, each of extended duration" within the meaning of the regulations. As the ALJ noted, Petitioner's psychiatric hospitalizations occurred years before Petitioner's alleged onset date and the more recent treatment records do not indicate any decompensation episodes. Accordingly, the Court finds no error in the ALJ's conclusion that Petitioner did not satisfy the B criteria for

---

[1] According to Petitioner, "Dr. Hoopes was either personally responsible for adjusting the Petitioner's medications or was overseeing adjustments that Nurse Reiland made." (Dkt. 18 at 12.) Respondent does not dispute this statement. Rather, Respondent argues: "The ALJ did not basis [sic] his rejection of the doctor's opinion on the treatment relationship with [Petitioner] but rather on the reasonable basis that the opinion was contradicted by contemporaneous treatment records." (Dkt. 19 at 8.) Given that Hoopes electronically signed all of Reiland's treatment notes, the Court concludes that Hoopes effectively adopted Reiland's findings as his own. *See Sailors v. Colvin*, No. 3:13-cv-01095-MC, 2014 WL 5810822, at *2 (D. Or. 2014) (finding that treating doctor adopted treating nurse's opinions).

**MEMORANDUM DECISION AND ORDER - 14**

Listing 12.04, notwithstanding the conclusory findings on the PRTF.

> To satisfy the C criteria, a claimant must have:
>
> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.04. On the PRTF, Reiland and Hoopes indicated that Petitioner satisfied the C criteria because he suffered from the requisite medically documented history of affective disorder, plus "a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." (*Id*. at 381.) On the other hand, the ALJ found Petitioner did not satisfy the C criteria, noting that the PRTF was contradicted by Reiland's clinical findings after Petitioner's alleged onset date.

This is a clear and convincing reason to reject the conclusory C criteria findings in the PRTF. The ALJ could reasonably conclude—based on Reiland's clinical notes after the alleged onset date, which Hoopes apparently adopted—that Petitioner would not be expected to decompensate due to a minimal increase in mental demands or change in environment. Indeed, the clinical findings from this period make no mention of decompensation, despite consistently noting that Petitioner was stressed by his

**MEMORANDUM DECISION AND ORDER - 15**

unemployment status, finances, social isolation, and the end of his 17-year probation. (AR 344–48, 511–14.) Because Reiland's detailed clinical observations could reasonably be found to contradict the conclusory findings on the PRTF, the ALJ had ample basis for disregarding the PRTF.

B.   *Alleged Inconsistency in Weighing the Medical Opinions*

Petitioner also contends the ALJ's conclusions about Petitioner's mental limitations rested on an inherently flawed analysis of the medical opinion evidence. He claims ALJ Molleur not only gave little weight to Hoopes's opinions (as expressed in Reiland's notes and the PRTF), but also gave little weight to the opinions of the State agency psychological consultants who reviewed his records. In other words, Petitioner argues that no medical evidence supports the ALJ's description of Petitioner's mental limitations, because the ALJ failed to give any opinion controlling weight. However, a close reading of the ALJ's decision reveals that is not the case.

"A treating physician's most recent medical reports are highly probative." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). With the exception of the conclusory PRTF opinions discussed above, the ALJ's assessment of Petitioner's mental limitations gave controlling weight to Reiland's findings—as adopted by Hoopes—from examinations conducted after Petitioner's alleged onset date. Petitioner contends the doctors who treated him during his various psychiatric hospitalizations noted significant mental limitations that the ALJ disregarded. But Petitioner does not explain how those opinions are more probative than Reiland's findings, considering the hospitalizations occurred years before the alleged onset date. As the ALJ recognized, the post-onset date

**MEMORANDUM DECISION AND ORDER - 16**

mental health records indicated improved, albeit still-impaired, mental function. Indeed, the ALJ apparently chose to disregard the State agency psychological consultants' opinions because they were inconsistent with the severe mental limitations established by Reiland's findings after the alleged onset date. (*Id*.) Although ALJ Molleur's discussion of these points is not a model of clarity, it nevertheless provides a legally adequate explanation of the weight given to the medical opinions supported by substantial evidence.

Petitioner also briefly argues the ALJ failed to develop the record, because he did not call a medical expert to testify as to Petitioner's mental limitations. The decision to call a medical expert is wholly discretionary, although "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Tonapetyan*, 242 F.3d at 1150. ALJ Molleur did not find the record was inadequate, nor did Petitioner's counsel object to the ALJ's decision to close the record at the hearing. (AR 31.) In fact, Petitioner argues the record is sufficient to support an award of benefits without further development. Moreover, Petitioner does not specify the ambiguous evidence that allegedly triggered the ALJ's duty to develop the record. Consequently, the Court finds no error on this basis.

3.   **The RFC**

Petitioner claims ALJ Molleur's RFC did not account for all of Petitioner's medically documented impairments. A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). An ALJ must consider all relevant evidence in the

**MEMORANDUM DECISION AND ORDER - 17**

record when making this determination. *Id*. An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). However, the ALJ need not consider, and the RFC need not include, alleged impairments not supported by substantial evidence. *Osenbrock*, 240 F.3d at 1163–64.

> Here, the challenged RFC reads:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he should only frequently balance, kneel, stoop, crouch, and crawl; occasionally climb ramps or stairs; and never climb ladders, ropes, or scaffolds. Additionally, the claimant should only frequently push, pull, and reach with his left upper extremity; frequently handle and finger with his bilateral hands; and avoid unprotected heights and mobile machinery. Finally, the claimant could perform no more than simple, routine, repetitive tasks and should have no more than frequent contact with supervisors, coworkers, and the general public.

(AR 16.) Petitioner argues the RFC did not sufficiently account for his tremors, obesity, left arm pain, and the combined effects of his mental and physical impairments.

As discussed above, the ALJ properly determined that Petitioner's tremors, arm pain, and mental impairments did not impose functional limitations beyond those set forth in the RFC. The ALJ appropriately relied on Dr. Heckard's uncontradicted medical opinion that Petitioner's tremors did not prevent him from lifting, carrying, and handling light objects. Concerning Petitioner's obesity, the RFC identifies several limitations in his ability to climb, and, as noted by the ALJ, Heckard's physical examination substantially supports the finding that Petitioner should only frequently balance, kneel, stoop, crouch, and crawl. Moreover, the ALJ noted, consistent with Petitioner's testimony and Adult

**MEMORANDUM DECISION AND ORDER - 18**

Function Reports, that Petitioner's impairments did not prevent him from daily activities that require these physical functions, including mowing the lawn, doing laundry, taking walks, and grocery shopping. Petitioner identifies nothing in the record, except his properly discredited testimony, that indicates more severe limitations than those described in the RFC.

In addition, Petitioner claims the RFC failed to address the synergistic effects of his schizoaffective and bipolar disorders combined with his physical impairments. But Petitioner does not specify which cumulative functional limitations were omitted from the RFC. The Ninth Circuit has determined it appropriate to "reject any invitation to find that the ALJ failed to account for [the claimant's] injuries in some unspecified way." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009). Because substantial evidence supports the RFC, the Court likewise declines Petitioner's invitation to second-guess the ALJ.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

Dated: **March 16, 2015**

Honorable Candy W. Dale
United States Magistrate Judge